IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARK D. MOROCCO, | ) | CASE NO. 4:14 CV 853 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.      Nature of the case and proceedings**

Before me[1] is an action by Mark D. Morocco under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security denying his applications

for disability insurance benefits and supplemental security income.[2] The Commissioner has

answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 16. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 12.

[4] ECF # 13.

[5] ECF # 9.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Morocco, who was almost 24 years old at the time of the administrative hearing,[10] is a high school graduate[9] who lives with his parents and has done some part-time work[10] but has  no relevant prior work experience.[9]  After an initial decision in 2010 denying benefits,[10] the matter was remanded for reconsideration of additional evidence.[11] In that second hearing after the remand, which is the subject of the present action, the ALJ found that Morocco was: (1) not disabled from May 1, 2008, through April 1, 2010;[12] (2) disabled by reason of hip

---

[6] ECF # 15.

[7] ECF # 17 (Morocco's brief); ECF # 27 (Commissioner's brief); ECF # 28 (Morocco's reply brief).

[8] ECF # 17-2 (Morocco's charts); ECF # 27-1 (Commissioner's charts).

[9] ECF # 17-1 (Morocco's fact sheet).

[10] Transcript ("Tr.") at 37, 247.

[9] *Id.* at 302.

[10] *Id.* at 52-53.

[9] *Id.* at 35.

[10] *Id.* at 120-21.

[11] *Id.* at 129-30.

[12] *Id.* at 26-30.

replacement surgery between April 1, 2010 and June 1, 2011;[13] and (3) not disabled after June 1, 2011.[14]

More specifically, the ALJ, whose decision became the final decision of the Commissioner, found that prior to April 1, 2010, the date Morocco became disabled, Morocco had the following medically determinable impairments: status post Hodgkin's lymphoma with chemotherapy and radiation therapy; osteoporosis with compression fractures of the spine; status post thrombocytopenia; toxic neuropathy; bilateral carpal tunnel syndrome; myofascial pain syndrome; isolated seizure; left shoulder pain; right foot fracture; learning disorder; history of attention deficit hyperactivity disorder; anxiety; major depressive disorder; and substance abuse disorder.[15] The ALJ further found that after June 1, 2011, Morocco does not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months and, therefore, he did not have a severe impairment or combination of impairments.[16]

The ALJ outlined the timeline of Morocco's disability as follows:

From April 1, 2010 through June 1, 2011, the period during which Morocco was under a disability, he had the following severe impairments: status post

---

[13] *Id.* at 30-32.

[14] *Id.* at 35-37.

[15] *Id.* at 26.

[16] *Id.*

Hodgkin's lymphoma; status post bilateral total hip replacements; and osteoporosis and compression fractures of the spine.[17]

From April 1, 2010 through June 1, 2011, the severity of Morocco's status post bilateral hip replacements met the criteria of section 1.02A of 20 CFR Part 404, Subpart P, Appendix 1.[18]

Morocco was under a disability, as defined by the Social Security Act, from April 1, 2010 through June 1, 2011.[19]

Morocco has not developed any new impairment or impairments since June 2, 2011, the date his disability ended. Thus, Morocco's current severe impairments are the same as that present from April 10, 2010 through June 1, 2011.[20]

Beginning June 2, 2011, Morocco has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.[21]

Medical improvement occurred as of June 2, 2011, the date Morocco's disability ended.[22]

The medical improvement that has occurred is related to the ability to work because Morocco no longer has an impairment or combination of impairments that meets or medically equals the severity of a listing.[23]

---

[17] *Id.* at 30.

[18] *Id.* at 31.

[19] *Id.* at 32.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

After concluding that the relevant impairments did not meet or equal a listing, the ALJ

made the following finding regarding Morocco's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that, beginning June 2,
> 2011, the claimant has had the residual functional capacity to perform
> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with certain
> restrictions. Specifically, the claimant can never climb ladders, ropes, or
> scaffolds. He can frequently climb ramps or stairs, and frequently stoop, kneel,
> crouch and crawl. The claimant can frequently handle and finger objects
> bilaterally. He can never use moving machinery and can never be exposed to
> unprotected heights.

As noted, Morocco has no past relevant work.[24]

Based on an answer to a hypothetical question posed to the vocational expert at the

hearing setting forth the RFC finding quoted above, the ALJ determined that a significant

number of jobs existed locally and nationally that Morocco could perform.[25] The ALJ,

therefore, found Morocco not under a disability as of June 2, 2011.[26]

## C.      Issues on judicial review and decision

Morocco asks for reversal of the Commissioner's decision on the ground that it does

not have the support of substantial evidence in the administrative record. Specifically,

Morocco presents the following issues for judicial review:

- The ALJ did not have substantial evidence to find that Morocco was
  not disabled from his onset date of May 1, 2008 until he was found to
  meet the listings on April 1, 2010. He failed to have substantial

---

[24] *Id.* at 35.

[25] *Id.* at 36.

[26] *Id.*

evidence to find that there was not severe impairment at Step Two of the Sequential Evaluation.[27]

- The ALJ erred when he discounted Morocco's credibility.[28]

- The ALJ did not carry his burden at Step Five of the Sequential Evaluation for the period prior to his finding that Morocco met the Listings.[29]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

### A.    Standard of review - Substantial evidence

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different

---

[27] ECF # 17 at 15.

[28] *Id.* at 21.

[29] *Id.*

conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[30]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[31] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[32]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## B.     Application of standard

Morocco asserts two major arguments: (1) that the ALJ failed to consider the entire record in determining at step two that his physical impairments during the relevant period were not severe, and (2) that the ALJ impermissibly discounted his credibility as to his pain. The final argument – that there was insufficient evidence at step five to show that sufficient jobs exist in the economy – is relevant only if the ALJ erred at step two. After reviewing the first two arguments below, I will conclude that the Commissioner's decision is supported by substantial evidence.

## A.     Step two decision

---

[30] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[31] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[32] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

As noted, Morocco's first argument is that the ALJ failed at step two to consider the record as a whole before concluding that Morocco's pain and physical impairments were not severe during the period 2008 to 2010.[33] Morocco contends that the record is "replete with evidence of ongoing pain complaints and prescriptions of narcotics as well as hospitalizations for infections"[34] which were improperly ignored by the ALJ in reaching his conclusion. The Commissioner, by contrast, points to the fact that the ALJ acknowledged the existence of numerous physical conditions or impairments during this period but concluded that either the conditions were resolved before meeting the one-year durational requirement or were "isolated complaints" that did not reach the level of severity that would impair an ability to work.[35]

The relevant impairments are viewed by both sides as arising in terms of physical impairments, not mental,[36] and as specifically concerning: (1) Morocco's radiation and chemotherapy for lymphoma, together with his allegations of pain, and (2) other physical

---

[33] Tr. at 26-30.

[34] ECF # 17 at 18.

[35] ECF # 27 at 14-19.

[36] The Commissioner observes that although Morocco did receive psychological treatment during the relevant period, "he does not counter the ALJ's reasoning for determining that his mental impairments were not severe." ECF # 27 at 18. Morocco does not rebut that characterization in his reply brief and focuses in his main brief only on how his extended treatment with mental health professionals substantiates his claims of pain. ECF # 17 at 18-19.

conditions which the ALJ determined were either not functionally significant or were resolved before they lasted for at least one year.

Morocco's treatment for lymphoma was acknowledged by the ALJ as part of an extensive review of his medical history. Essentially, the ALJ found that despite a May 2008 diagnosis of Stage IVB Hodgkin's lymphoma, and immediate treatment with chemotherapy and radiation, by January, 2009, Morocco's lymphoma was in "clinical remission" and he was reported as doing well.[37] A few months later, in March, 2009, Morocco went to an emergency room with complaints of pain in his back.[38] An MRI revealed multiple compression fractures in the thoracic spine, and Morocco was prescribed pain medication, including Vicodin, as well as directed to undergo physical therapy.[39]

However, just a few months later in May, 2009, the ALJ found that Morocco was "buying additional Vicodin off the street" and "riding a BMX bike and grinding on a rail."[40] The ALJ concluded these activities were "significantly physical," and "indicated a greater capacity [for physical activity] than [Morocco] has claimed in his [disability] applications

---

[37] Tr. at 28 (citing record).

[38] *Id.*

[39] *Id.*

[40] *Id.*  A BMX bicycle is an off-road sport bicycle used for racing and stunt riding. BMX is an acronym for "bicycle, motorcross." Grinding the rail refers to a practice whereby the rider of a skateboard or bike rides down a length of narrow, flattened rail elevated above the ground.

as well as to his physicians."[41] Moreover, the ALJ reasoned, because these activities also took place during a period when Morocco was not seeking additional treatment for pain, this shows that whatever pain he may have had was "not so severe as to more than minimally limit his ability to perform basic work related activities."[42]

Morocco contends that the ALJ erred by relying on his BMX bike riding as proof that his physical conditions were not severely limiting. In that regard, he asserts that there is "no evidence that this was a regular occurrence and expecting a 20 year old to remain completely idle is unfair."[43] Moreover, he argues, the ALJ should have "factored in" his multiple appointments with various medical providers over this period.[44] In that regard, in his reply brief Morocco maintains that most of his treatments, whatever the immediate cause, are actually traceable to his cancer and resulting therapy, such that even his inability to continue with physical therapy is a consequence of his cancer treatment and not a reflection of a lack of severity in his pain.[45]

On review of the ALJ's decision in light of the record, I find that Morocco has not met his burden of establishing that a combination of his lymphoma and hip pain produced disabling pain for a continuous period of at least 12 months during the period at issue. As the

---

[41] *Id.*

[42] *Id.*

[43] ECF # 17 at 20.

[44] *Id.*

[45] ECF # 28 at 2-4.

Commissioner points out, the ALJ here took care to detail the significant treatment Morocco received during this period, but also correctly observed that whatever pain may have accompanied these events was not so severe as to be disabling for the requisite length of time. The ALJ properly noted that such significant physical actions as riding a stunt bike along an elevated rail are not consistent with claims of disabling pain. In addition, as the Commissioner also notes, the ALJ further observed that Nino Rubino, M.D., one of Morocco's treating  physicians, found that Morocco's pain complaints were overstated.[46]

Thus, given the opinion of a treating physician that was expressly cited by the ALJ, the example of significant physical exertion also noted by the ALJ, and Morocco's own failure to seek additional treatment for pain or to complete prescribed physical therapy, I find that substantial evidence supports the Commissioner's finding in this regard.

## B.    Credibility finding

The same evidence cited above also goes to support the ALJ's finding that Morocco was not fully credible in his complaint of disabling pain. While Morocco argues that too much emphasis was placed on the BMX bike incident,[47] and further asserts that other explanations are available for why he did not complete his prescribed physical therapy,[48] the

---

[46] ECF # 27 at 15, citing record. Indeed, Dr. Rubino consistently found over four examinations in late 2008 and through mid-2009 that Morocco's pain complaints were out of proportion to largely normal physical findings and that any pain could be managed with medication. Tr. at 605, 938, 939, 940-41.

[47] ECF # 17 at 21.

[48] ECF # 28 at 4-5.

fact remains that the ALJ had sufficient evidence to conclude that Morocco's complaints were not fully credible. In that respect, the ALJ properly noted the presence of strenuous physical activity in the form of BMX bike use, which was incompatible with allegations of disabling pain,[49] and also correctly noted that Morocco's own treating physician, who also expressed concern about Morocco's use of narcotics, concluded that Morocco's pain allegations were out of proportion to the objective findings of the physical examinations.

In sum, I find that the Commissioner's decision to discount Morocco's credibility is supported by substantial evidence.

## C.    Step five

As noted above, Morocco's contention that the Commissioner has not carried her burden at step five concerning the existence of work in the national economy is moot in this case because there was no error in the finding that Morocco is not disabled for the period in question.

---

[49] I further note that contrary to Morocco's inference that his BMX bike use was a rare or singular occurrence, the record shows that it was such a regular feature of his life that he resumed riding the bike even after he broke his right foot in May, 2009, and was advised against resuming this practice. Tr. at 29.

## Conclusion

Therefore, and for the reasons stated above, substantial evidence supports the finding of the Commissioner that Morocco had no disability for the relevant period. The denial of Morocco's applications in this regard is affirmed.

IT IS SO ORDERED.


Dated: July 31, 2015                                    s/ William H. Baughman, Jr.
                                                       United States Magistrate Judge